honors. We'll hear the next case, United States, uh, X rel Tesla versus the city of New York. Good morning, your honors. My name is Akiva Tesla. I'm the pro se appellant. I'm an attorney. The court below made several errors in its decision. First, it attempted to distinguish the case in this district that's most on point here, Feldman case, and it totally failed to do so. The court stated that the case is distinguishable because, among other things, the government attached specific examples of the alleged false claims to the complaint. Now, in the Feldman case, the government attached to the complaint three CMS reports, which are the quarterly reports that are filed by the state of New York for Medicaid benefits. All that this form shows is that hundreds of millions of dollars were spent by the city of New York on Medicaid and that hundreds of millions of dollars of those constituted federal funds. In no ways do these forms tie any specific claims to these forms, so it wouldn't really add anything of substance. I cited in the complaint... Where in the Second Amendment complaint do you allege that the city failed to recoup the benefits and the details as to why recoupment was required? Okay. The details as to why... The reason for the requirement of the recoupment is the federal regulation, which is cited in the complaint. There's a federal regulation and state regulations and state law that... We need some facts. What are the factual allegations that show that recoupment was required? The requirement is in the federal regulations. The reason... The regulations require recoupment, and I showed that there was no recoupment based on my three years... Regulations require recoupment in certain circumstances. Yes. Did you allege those circumstances in the Second Amendment? I did not allege that there was one exception, and that is when the recoupment is $500 or less. I don't have to plead every exception. That is a defense for the defendant to allege, and the cases that I'm alleging are all above the threshold, and the majority... Do you have to allege facts, though, as to the Medicaid reimbursement? Do you have to fraud? Yes. Where's that? The... It's exactly as was alleged in the Feldman case. The inference of fraud is based... And here's where the court, again, made a mistake. I'm entitled to an inference in my favor of any reasonable inference. The emails regarding Medicaid show that for 10 years, the city simply failed to recertify annually 1,000 people, the same 1,000 people, refused to recertify them for Medicaid, and did claim, make claims for those benefits, and never even stop it until they were told to do it by the State of New York. That's what the doing it over a course of 10 years, and not even discovering it, shows, at the very least, a reckless disregard on the part of the city in not realizing what they were doing, if that was, in fact, the case. And the Feldman case said that the fraudulent intent is shown by the city systematically authorizing benefits to people who were not entitled to receive them. Just to follow up on Judge Ceroni's question, where are the allegations of fraud? I'm looking at the emails, for example, A76, and there's a reference, the clients that have not had a renewal since 2004, many of them are no longer eligible. That doesn't say anything about whether they were not eligible in the past, and whether there should be an effort made to recoup. So where is it in the- This is not a recoup. The recoupment has nothing to do with this. This is Medicaid, Medicaid's list of- Well, where are the allegations of fraud? The fact that the city, in a period of 10 years, kept requesting monies from the federal government to pay to Medicaid recipients who were never certified to receive them. For 10 years, the city paid out medical assistance benefits without recertifying them for benefits every year, as they were required to do so. How is that not gross disregard for their obligations? If anything, this is the gross- Is gross disregard enough to constitute fraud? Enough to- I'm sorry, I'm sorry. Yes, there's a- to show science or fraud, it's enough to show gross disregard or reckless acts, conduct by the city. And that's what the Feldman Law held also. The court also failed to apply the Escobar case properly, misapplied the Escobar case in this case. It said that there was no showing of an express or implied certification herein, whereas the Escobar case shows that there was, in fact- How about the ATC overpayments? Did you allege, as the aid to continue overpayments, did you allege that the city actually failed to recoup those payments? Yes. And how do you know that? I know that from being there for three years and conducting numerous hearings, and conducting numerous hearings where there were aid to continue benefits granted, and I've never conducted a hearing- Was recoupment relevant in your hearings? Some of them, yes. Really? How? I had hearings regarding SNAP and federal assistance and public assistance benefits where many, many hearings where the benefits recipients were granted aid to continue, and you would expect that when they lost the hearings, the city was required to recoup them. Now, it is true that I was not- You know that the city failed to do that. I know that the city failed to do that because when I looked at the statistical database of fair hearing decisions kept by the OTDA from 2006 to 2014, the city, there were only 300 or less fair hearings conducted on recoupment of benefits where there should have been tens if not hundreds of thousands. So, and the court below failed to draw an inference in my favor, whereas the case law is clear that statistical evidence, and in this case they corroborated my personal observations, can be the actual case law states that in cases where the defendant induced third parties to file false claims with the government, courts have held that- You've gone over your time. You have saved three minutes for rebuttal. Do you want to use it now, or do you want to use it for rebuttal? I'll save it for rebuttal. Okay, let's hear from the city. Good morning, Your Honors. David O. Adegbile from WilmerHale for the City of New York. The judgment in this case can be affirmed on two straightforward grounds. First, the district court found that as to the aid to continue allegations in the second amended complaint, they fall far short of satisfying 9B. He was just talking about this. Let me ask you a question. He says that if they were actually recouping, there would have been many hearings because not everybody would have, because I guess people would have said no, we are not obligated to pay and ask for a hearing. And he said, well, there were only 300 hearings. There should have been 10,000. So what's wrong with that argument? What's wrong with that argument is that Mr. Tesler has not put together a coherent argument about a fraud, a fraudulent scheme. He hasn't even cited the relevant prohibitions or the statutory thresholds beyond which recoupment is, or below which recoupment is not required. I understand that recoupment is not required for the small sums, but since he's alleging there should have been tens of thousands, somewhere in there, he says, there should have been more than 300 above 500, that that's a reasonable inference. Why isn't that a reasonable inference that there should have been more going on than 300? Under the False Claims Act, more is required with respect to, that's a rather large inference, and we need to know something more about the circumstances of, not only of the program, but also the circumstances in which recoupment may or may not happen. For example, Mr. Tesler, as Judge Droney points out, was an ALJ who was focused on one part of the process. His allegations stretch broadly before he ever sat in that chair, as the District Court opinion points out, and continue afterwards. And he doesn't speak to or describe in any significant way what the policies were, what the fraud, fraudulent scheme was. He essentially just says that I think that there should have been more, there should have been more recoupments. But he doesn't give us any details, even when he points to a part of that database, how it's collected, what information is in there. It's essentially a naked assertion, more akin to the type of noncompliance that we see, that this Court dismissed a similar complaint in, in the Lattice case. Did the statistics for aid to continue break out how often the thresholds for recoupment were crossed? In other words, if it's not a certain amount, it's not pursued, right? So, does those statistics he relied on break out when those, the percentage where the thresholds were exceeded? Those, those statistics, or any statistics of that kind, are not, are not actually asserted in the, in the amended, in the second amended complaint, as far as I know. And because we're at the threshold 12B6 stage, there hasn't been a full investigation into what all of the statistics may be. And so, what we have are his allegations without more, but we don't, we don't really know anything in a concrete way about any fraud that's happening. And, and I think it's, it's significant to point out that, that Mr. Tesler, specifically with respect to his allegations about the fraud, he's really focused on a very narrow period. And it's, it's not a small defect in his pleading that he doesn't accurately describe how the system works. Indeed, with respect to the TANF recoupments, there, there are two programs in, in the ATC context. One is the, one is the, the SNAP, essentially what used to be the successor to the food stamp program, and then the public assistance, as it were, the TANF program. And he, he doesn't even rightly explain, as, as, as we do in our brief, that as to those benefits, those are provided through a block grant that goes to the, that goes to the state. The state, the city administers it in, in conjunction with the state. And there, there is, he points to no federal rule that actually requires recoupment in, in those scenarios. He, he cites an, a, an, an outdated circular with respect to the earlier, the original claim, where there are fatal defects in his pleading, as the, as the lower court found. Uh... Can I ask just a general question? If you have a situation, maybe it's, uh, where the federal government's providing money and then, later on, there's an allegation they failed to comply with getting recoupment when the, they, the federal government, the original claim should not have been paid because it was wrong, and then, then the city doesn't do it. Does that, does that make sense to you? Where's the claim? So, this is, this is a... Is that, is that a possible claim? Is that one of those strange, false Claims Act claims that's not a direct claim, but is still actionable? In, in certain circumstances, it may be actionable, if there were, uh, a lot more details alleged and provided. For example, we would need to connect the fraudulent scheme to an actual stream of money, or where that payment would happen. The temporal sequence is important in this context. He doesn't, he doesn't need, we certify, we certify that we've done everything to get this money back. He doesn't need that kind of thing. I, the problem is, there's a payment made, right? And then, all the problem is later, when you find out that it shouldn't have been made. And I don't know how this scheme works. Is there, like, a set-off? Um, is, is the city supposed to say, don't give us this amount of money, because you didn't know it was this? I don't understand how this works. Right, and I, I, I think that we're having this conversation is, in part, a reflection of the deficiency of the pleading, because in a False Claims Act case, we are supposed to connect the dots, to some degree. We are supposed to understand, essentially, what we have here is a claim of non-compliance, and then we don't have any of those facts about what happens after, what the stream of payment is, what is the mechanism through which it would be collected, who collects it? Who collects it? Because the city is administering the program, but it's not, it's not the city, um, in, in, in these circumstances who's making the claim, and so, the, the fact is, there, there is, under the federal scheme, some way, uh, presumably, that those monies could come back, and that the accounts could be made right. But in a False Claims Act case, you can't simply file and have a phishing expedition as to what may happen in programs. You need to have a allegation, a clear allegation, as to what the fraudulent scheme was, and then to connect it with some particularity to a scheme. Maybe it'd be more, it'd be easier to figure this out in the Medicaid context. Um, that's not a block grant, right? The, the... Medicaid? How did, Medicaid? That's not the block grant situation. Right. In that situation, the, the money is running, and it's, the, the money through the Medicaid savings program is used, or is used as an offset to the, um, to the Medicare, um, as applied in, in service of Medicaid benefits. All right. Moving for a moment, um, since we, since we're discussing the Medicaid savings plan, uh, program, in, in that context, um, we, we certainly don't have any factual basis which gives rise to a strong inference of, of intent. Uh, what, what we have here, and what the lower court described, is essentially a set at one, at one point in time, there was identified, and the email makes it clear, a, a group, 10, 1060, I believe is the number, but a particular group of people that had not had redeterminations made, as the allegation goes. That was quickly discussed and corrected. There is no, there is no fraud alleged, there is no fraud pointed to, there's no reasonable fact from which we could infer fraud in that context. Does the city have to say, when they're getting these Medicaid, this, this Medicaid money, we've certified, we've recertified these people? There, there is a, there is a form, the city does have to determine eligibility, so it has, um, through the, through the way that the program works in, in collaboration with the state, this, this city does certify eligibility. That, that's, that's correct. But, um, but the, the point here is that it, that this was described as a mistake, and we have no other facts that point to anything beyond that. There are no other facts alleged with respect to that. Um, moving very quickly to, um, a, a potential alternative ground for this court. So, we have, um, with respect to the ATC, we, we, um, the complaint is fatally deficient and wanting, in terms of the fraudulent scheme, the factual details that connect the allegations of noncompliance to an, to an actual, um, effort to commit fraud here. We, we've discussed that with respect to the Medicaid, uh, Medicare savings plan, the, the requisite scienter is not there. And, and after Escobar, I think it's fair to say that there is also, um, the complaint also suffers from difficulties with respect to materiality. Uh, it, it's clear that the, that the standard for materiality is a high standard, and the, the, the court, um, the Supreme Court tells us that it's a strict standard after Escobar. And what, what is required is that, uh, Mr. Tesler, that the relators show likely or an actual effect on the behavior of the government, um, in paying claims, but also that the city knew that it would have such an effect. We, we are a long way away from any allegation in the complaint that could do either of those things. And in, in closing with my, my final moments here, I'd like to say that this court has considered, um, false claims act issues in recent cases. On the, on the one hand, Judge, Judge Droney was on the Lattice panel, uh, Judge Chin, uh, respectfully was on the Fabula panel. I think this case can be resolved by seeing the difference in those two cases and what those two cases tell us when read together is that pleading matters. Where you plead with details, where you have specifics, when you speak about the fraud as in the Fabula case, and you have details about specific instruction to commit fraud, um, supervisors giving red lines to falsify documents, that level of detail puts you over the hump. In contrast, in Lattice, where you have a circumstance where, where the allegations are simply that there was noncompliance without the requisite nexus, without the dots um, thank you, and uh, respectfully, we would ask that the court affirm the judgment of the District Court. Thank you. We'll hear the rebuttal. Thank you. Ioana, as to your question about the failure to recoup, what would, what would happen if, if the, uh, if the uh, benefit recipient loses a hearing, uh, within two months, the city must issue a notice in those cases, the majority of the cases where the threshold is over the $500, the city must issue a notice to recoup, uh, telling the, the benefit recipient they'll subtract 10% or whatever the amount is from each ongoing, uh, payment. Um, and the, the, the allegations are that for 13 years now, still running, the city does not recoup. It's obvious they do not recoup because the, the database shows, and my personal observations over the course of three years, even over the course of three years that I was there, I did not see any of those cases. I would, I would have seen a thousand from my fellow judges and some, some from me. Let's assume there should have been thousands of these hearings. What are the allegations of fraud, that there were false claims submitted to the federal government? Ioana, look at the Feldman case. In the Feldman case... I'm asking about this case. What are the allegations of fraud? Allegations of the same, same exact as in the Feldman case, that the city over a course of 10, 13 years does, refuses to do what they're required to do under regulations. Um, the, uh, that's, that's the fraud. Okay. But we don't have anybody, you don't have any allegation that there's somebody here, uh, who's saying, let's do this. I mean, you know, we, we had that, that EMT case. You've got some boss who's telling the fella, you know, make out a fraudulent statement. And the implication is, he didn't tell him to do that for no reason. But you may have just a messy system and no compliance. Every case is different, Ioana. That, this is a third party case. This is the city giving false authorization lists to the state. I'm a state administrative law judge sitting on, I, I have no knowledge of them colluding to do it. But the fact that they, for 10 years, for 10 years are not doing it and, and they can, there can be no good reason to not to do it, in the majority of the cases. That shows that reckless disuse, the Feldman case is exactly like that. The, the, the government urged that the, the fact that the city systematically authorized PCS benefits in violation of the state Medicaid regulations raised a plausible inference, which this court below refused to do, that the city acted in deliberate indifference or in reckless disregard of the fact that those violations would result in submission of false claims to the United States. And the court agreed and said it's altogether plausible to characterize the city's alleged misconduct, providing its residents with undeserved access to very valuable federal benefits, the cost of only a small portion of which the city must bear, as economically and politically self-interested broadly defined. The court therefore concludes that a finer fact could reasonably infer from the government's allegations that the city knowingly caused the submission of false claims. The big picture here is that the city has refused to recoup benefits for the last 13 years, and that the city for 10 years did not, handed out Medicaid benefits without recertifying people every year as they are required to do. To say that it's a mistake, the court called it a mistake, drawing an inference in favor of the defendant here, whereas they should have drawn an inference in my favor, in the city, in the United States government's favor. Also, you want to just want...